IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| VALLERIE HARDY, | ) | |
| | ) | No. 6:10-cv-02972-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER | ) | |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the magistrate judge's Report and Recommendation (R&R) that this court affirm the Administrative Law Judge's (ALJ) decision denying plaintiff's application for disability insurance benefits (DIB). Plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's denial of benefits.

## I. BACKGROUND

Plaintiff Vallerie Hardy first filed for DIB on November 25, 1996. Her application was denied on January 14, 1997, without appeal. Hardy filed a second application for DIB on June 4, 1998, which was denied initially on July 16, 1998, and upon review by the ALJ on June 16, 2000. Hardy last met the disability insured status requirement on June 30, 2000.

Hardy filed the instant application for DIB on October 26, 2001. Hardy alleges disability since March 31, 1995; however, because her first claim for DIB was denied on January 14, 1997, without appeal, her earliest possible onset date of disability is January 15, 1997. As Hardy's insured status expired on June 30, 2000, the period of disability at issue in this case is from January 15, 1997, to June 30, 2000. Hardy's claim was denied

1

on March 4, 2002, and upon reconsideration on December 6, 2002.  Hardy timely requested an administrative hearing, which was held on December 2, 2004, and continued February 3, 2005.  The ALJ denied the claim on June 15, 2005.  Tr. 16-25.

On May 22, 2007, Magistrate Judge William M. Catoe filed an R&R, recommending that the ALJ's decision be reversed and remanded for further proceedings under sentence four of 42 U.S.C. § 405(g).  Tr. 512.  No objections were filed.  On June 14, 2007, this court adopted the R&R, which gave the following instructions to the ALJ on remand:  (1) to reconsider the weight due Hardy's treating physician opinions; (2) to reevaluate the link between Hardy's mental impairments and her subjective complaints of pain; (3) to reconsider Hardy's residual functional capacity (RFC), in particular why Hardy's obesity, migraine headaches, asthma, and anxiety were found not to be severe impairments; and (4) to resolve conflicts between the Vocational Expert's testimony and the Dictionary of Occupational Titles.  Tr. 486-87, 507-12.

Pursuant to the remand order, the Appeals Council directed further consideration of Hardy's alleged disability to the ALJ.  Hardy testified at a supplemental hearing held on February 7, 2008.  On March 28, 2008, the ALJ again denied Hardy's application for DIB.  Tr. 450-66.  Magistrate Judge Kevin F. McDonald filed an R&R on January 6, 2012, recommending that the Commissioner's decision be affirmed.  Tr. 512.  Hardy filed timely objections to the R&R on January 23, 2012.

Hardy was 51 years old when her insured status expired.  Tr. 463.  She suffers from a history of degenerative disc disease in her neck with surgery there, asthma, anxiety, depression, diabetes, headaches, and obesity.  Tr. 180, 304-09, 453.  Hardy has

past relevant work experience as an insurance underwriter, administrative specialist, and telephone operator. Tr. 90, 104.

In 1995, Hardy underwent a cervical discectomy after a spinal MRI revealed bone spurs. Tr. 309. Following her surgery, in May 1996, Hardy began seeing Dr. Lovelace for treatment. Tr. 283. Hardy complained of head, neck, and arm pain, along with sleep difficulties. Tr. 300. Dr. Lovelace referred Hardy to a pain management center, where, in conjunction with intensive pain treatment, Hardy underwent a psychological evaluation by Dr. Drummond. Tr. 180. In December 1998 and January 1999, Dr. Drummond administered several psychological tests, including a Millon Clinical Multiaxial Inventory-III (MCMI-III) and Minnesota Multiphasic Personality Inventory 2 (MMPI-2). Tr. 138-64. Dr. Drummond noted a likely relationship between Hardy's "physical problems" and "depressed mood." Tr. 149. Near her completion of the pain program, another physician, Dr. DuBose, remarked that Hardy "is doing quite well" but "continues to have some pain complaints." Tr. 169. A physical therapist stated that Hardy made "moderate gains." Tr. 168.

Following the completion of her pain program, Hardy told Dr. Lovelace that she received no relief, but Dr. Lovelace observed that "the last note from the Pain Clinic in 4/99 suggests that she was better." Tr. 284, 293. On February 25, 2000, Dr. Lovelace wrote to Hardy's attorney and stated that Hardy "failed to improve" from her treatment in the pain center and "is unable to be gainfully employed due to her illnesses and chronic pain." Tr. 283, 297.

Hardy's insured status expired on June 30, 2000. Tr. 451. In February 2002, stage agency psychologists Drs. Phillips and Ibiary reviewed Hardy's medical records for

3

the period at issue and opined that the evidence was insufficient to establish any mental impairment. Tr. 206-19. Dr. Ibiary determined that Hardy was restricted to performing light work with no more than occasional climbing. Tr. 200. State agency psychologist Dr. Varner also reviewed Hardy's records and found that up until the date she was last insured, Hardy's impairments "imposed minimal limitations on her ability to perform basic work functions." Tr. 196.

In November 2004, Dr. Lovelace completed a questionnaire in support of Hardy's application for DIB, opining that Hardy "is permanently disabled due to her multiple problems and has been since [February 25, 2000]." Tr. 355. Dr. Lovelace also wrote a letter stating that, in light of Hardy's impairments, she "would most certainly miss more than an hour of work during the working portion of an 8 hour work day, and would miss more than 3 days of work per month[], on the average." Tr. 356.

Also in November 2004, Dr. Smith, who began treating Hardy in May 2003 for psychological problems, wrote a letter on Hardy's behalf stating that she "would have great difficulty with any activity that called for regular attendance, meeting a schedule, performing on a production schedule, or quotas. She would certainly miss more than 3 days of work per month . . . . She would have marked difficulty dealing with work peers, supervisors, and the public." Tr. 354. Dr. Smith relied on the MCMI-III and MMPI-2 tests administered by Dr. Drummond in 1998 and 1999.

In January 2005, Dr. Drummond provided a letter summarizing his prior treatment of Hardy at the pain management center. Dr. Drummond opined that during this time, she "had a psychological condition that was sufficiently severe to interfere with any regular activity, including work." Tr. 359. Dr. Drummond noted that Hardy "also

4

suffered from a physical pain condition." Id. As a result, Dr. Drummond found that Hardy "would have missed more than 3 days or more of work during any month, and more than an hour during the working portion of any work day because of these psychological problems." Id. Dr. Drummond "did not follow Ms. Hardy before or after [late 1998 and early 1999]," but found "it was clear that she had a chronic condition at the above level of severity both before and after treatment in our program." Id. Another physician in the pain center, Dr. Prabhu, wrote a letter in March 2005 stating that Hardy "did fairly well physically." Tr. 360. Dr. Prabhu deferred to Dr. Drummond's analysis of Hardy's mental impairments.

## II. STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits is narrowly tailored to "determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence has been defined . . . as more than a scintilla, but less than [a] preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

"[T]he court [must] uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456.

### III.   DISCUSSION

"Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine whether the claimant: (1) is engaging in substantial gainful activity; (2) has a "severe impairment"; (3) has an impairment that meets the criteria listed in 20 C.F.R. part 404, subpart P, appendix 1; (4) has the RFC to perform past relevant work; and (5) can perform any other work considering the claimant's vocational factors (RFC, age, education, and work experience). See id. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If at any step the claimant is found disabled, no further inquiry is needed. 20 C.F.R. § 404.1520(a)(4).

At the first step of the sequential analysis, the ALJ found that Hardy had not engaged in substantial gainful activity from the relevant period of January 15, 1997, through June 30, 2000. Tr. 453. Proceeding to the second step, the ALJ found that Hardy had the following severe impairments: residuals of degenerative disc disease of the cervical spine post surgery; depression; and a pain disorder. Id. Hardy's obesity, migraine headaches, asthma, and anxiety were found not to be severe impediments as defined by the Regulations. Id. At step three, the ALJ found that Hardy had no impairment that met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. At steps four and five, the ALJ determined that Hardy, through the period at issue, was unable to perform past relevant work but had the RFC to perform simple, routine, light work in a supervised environment, with additional limitations. Tr. 455, 463. The ALJ concluded that considering Hardy's vocational factors, Hardy could perform jobs existing in significant numbers in the national economy, thus she was not disabled. Tr. 464.

The magistrate judge recommended that the court affirm the ALJ's decision. Hardy objects that the ALJ failed to follow this court's remand order. She specifically argues that the ALJ failed: (1) to give great weight to the opinions of her treating physicians and to give sufficient reasons for denying those opinions controlling weight; and (2) to properly analyze her subjective complaints of pain and credibility. The court takes these objections in turn.

### A. Evaluation of the Medical Opinions

Hardy first argues that in assessing her RFC, the ALJ failed to properly evaluate the medical opinions of her treating physicians, Drs. Lovelace, Drummond, and Smith. This court previously remanded to the ALJ to consider the weight to be given to the

treating physicians' opinions according to the factors listed at 20 C.F.R. § 404.1527(d). Tr. 507. The ALJ subsequently determined that the opinions of Drs. Lovelace, Drummond, and Smith were not "supported by objective clinical findings or persuasive in evaluating [Hardy's] disability for the period at issue." Tr. 463.

Under the "treating physician rule," a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Statements that a patient is "disabled" or "unable to work" are not medical opinions but administrative findings reserved for the Commissioner. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). The ALJ is not free to simply ignore such statements, but must instead "evaluate all the evidence in the case record" to determine whether the statements are "supported by the record." Id. at *3.

When an ALJ assigns less than controlling weight to a treating physician's opinion, she must still give "good reasons" for the weight given, by "rationally articulat[ing] the grounds for her decision." Steel v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002); SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). In assigning a weight, the ALJ must consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician; and (6) other factors which tend to support or contradict

the opinion. 20 C.F.R. § 404.1527(d)(1)-(6). Courts do not typically require an ALJ to expressly discuss each factor; however, "the ALJ must at least indicate that he or she was aware of and considered all of the factors." Baxter v. Astrue, No. 10-3048, 2012 WL 32567, at *6-7 (D. Md. Jan. 4, 2012). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up some 'specious inconsistencies,' or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (citation omitted).

### 1. Dr. Lovelace

The court's prior remand order required the ALJ to consider the weight owed to Dr. Lovelace's opinions according to the § 404.1527(d) factors. The ALJ again found Dr. Lovelace's opinions to be unpersuasive. Hardy argues that the ALJ failed to properly give Dr. Lovelace's opinions controlling weight. Pl.'s Obj. 7.

The ALJ's decision shows that he weighed Dr. Lovelace's opinions according to the § 404.1527(d) factors and gave good reasons for the weight given. First, as to Dr. Lovelace's statements that Hardy was "disabled" and "unable to be gainfully employed," the ALJ properly found that such statements are administrative findings reserved for the Commissioner. See Tr. 355 (questionnaire stating that Hardy is "permanently disabled due to her multiple problems"); SSR 96-5p, 1996 WL 374183, at *5 ("Such opinions . . . can never be entitled to controlling weight or given special significance."). Next, applying the § 404.1527(d) factors, the ALJ recognized Dr. Lovelace's status as Hardy's primary care physician, discussed Hardy's visits with Dr. Lovelace during the relevant period and the nature and frequency of those visits, and analyzed the supportability and

9

consistency of Dr. Lovelace's opinions. Tr. 456. Specifically, the ALJ determined that Dr. Lovelace's opinions as to Hardy's disability were inconsistent with his own treatment notes and those of other physicians. For instance, in February 2000, Dr. Lovelace wrote that Hardy had "failed to improve" from her treatment in the pain center, Tr. 283, but his treatment notes from September 1999 refer to Dr. DuBose's April 1999 report, which states that Hardy "has actually done fairly well," "is recovering more quickly," and "overall feels in more control." Tr. 166, 293. A physicians opinion "should be accorded significantly less weight" if it "is not supported by clinical evidence" or "inconsistent with other substantial evidence." Craig, 76 F.3d at 590.

Moreover, in the remand order, the magistrate judge found that the ALJ had previously "ignored the evidence showing [the] psychological nature of the plaintiff's pain disorder, which [the ALJ] found was a severe disorder." Tr. 506. Here, the ALJ did not disregard Hardy's psychological symptoms during the period at issue, including her depression, but took them into account. He found that Hardy "initially reported an essentially situational depression and thereafter had a good response to a simple medication regime prescribed by Dr. Lovelace." Tr. 461. The ALJ also factored Hardy's mental limitations into his final RFC assessment, finding, "The mental limitations are supported by the clinical evidence as to a pain disorder and depression sufficient to interfere with concentration and memory but not to preclude all work." Tr. 463.

For these reasons, the court finds that the ALJ evaluated Dr. Lovelace's medical opinions according to the appropriate standards and that his decision is supported by substantial evidence.

### 2. Dr. Drummond

Next, Hardy argues that the ALJ failed to properly evaluate Dr. Drummond's medical opinions. Pl.'s Obj. 6. The court's remand order instructed the ALJ to apply the § 404.1527(d) factors to Dr. Drummond's opinions. Subsequently, the ALJ found Dr. Drummond's opinions to be unpersuasive and unsupported by the substantial evidence of record. Tr. 463.

The ALJ looked to the length, frequency, and nature of Dr. Drummond's treatment, noting that Dr. Drummond treated Hardy during her "brief" five-week period at the pain management center, "for a psychological evaluation purely related to her participation in a pain management program." Tr. 462. The ALJ then considered the consistency and supportability of Dr. Drummond's opinions, noting inconsistencies between Dr. Drummond's conclusions based on the psychological tests he administered and the test results themselves. In particular, the ALJ referenced Dr. Drummond's reports from the pain management program, which indicated "psychological dysfunction of mild to moderate severity" that could "be managed with either brief or extended therapeutic methods," and that Hardy "made gains regarding depression, strength, endurance, and flexibility, and insight as to needed further changes." Tr. 139, 144, 175. Yet, in 2005, Dr. Drummond opined that during the period at issue, Hardy "had a psychological condition that was sufficiently severe to interfere with any regular activity, including work." Tr. 359; see Montgomery v. Chater, No. 95-2851, 1997 WL 76937, at *1 (4th Cir. Feb. 25, 1997) (holding ALJ properly discredited treating physician's opinion because "contemporaneous records documenting [the claimant's] condition at the time of treatment failed to corroborate his retrospective opinions"). The ALJ also pointed

11

out that the MCMI-III and MMPI-2 reports "state, essentially, that they cannot be considered definitive and must be evaluated in conjunction with additional clinical data."[3] Tr. 139, 151, 462. Finally, the ALJ noted that the record only contains Dr. Drummond's initial report at the pain center, his closing report, and a summary of his opinions prepared nearly six years later, none of which identify any specific treatment afforded by Dr. Drummond. Tr. 462. "[T]he claimant has the burden of producing evidence in support of his claim and . . . his claim for benefits may be properly denied if his evidence is insufficient to persuade the [Commissioner]." Breeden v. Weinberger, 493 F.2d 1002, 1005 (4th Cir. 1974); see also Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005) ("To qualify for DIB, [the claimant] must prove that she became disabled prior to the expiration of her insured status.").

In addition, in the court's prior remand order, the magistrate judge found that "there is no evidence that Dr. Drummond's opinion was unreliable because his memory was flawed." Tr. 506. Here, unlike in his previous decision, the ALJ did not focus on Dr. Drummond's ability to recall his prior treatment of Hardy. Cf. Tr. 20 with Tr. 459-60, 462. The ALJ instead applied the § 404.1527(d) factors and gave specific reasons for the weight given to Dr. Drummond's opinions, and his decision is supported by substantial evidence.

---

[3] Hardy argues that the ALJ improperly supplanted his own analysis of these tests for that of Dr. Drummond, Pl.'s Obj. 6, but in reality the ALJ simply pointed out objective inconsistencies between the test results and summarized the disclaimers written on the test reports. In making an RFC assessment, the ALJ is required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

### 3. Dr. Smith

Finally, Hardy argues that the ALJ failed to properly evaluate Dr. Smith's medical opinions. Pl.'s Obj. 5. The court's remand order instructed the ALJ to apply the § 404.1527(d) factors to these opinions.

The ALJ gave specific reasons for the weight afforded to Dr. Smith's medical opinions. As mentioned, Dr. Smith began treating Hardy in May 2003 for her psychological impairments, almost three years after Hardy's insured status expired. In November 2004, Dr. Smith wrote a letter on Hardy's behalf, stating that during the period at issue, Hardy "would certainly miss more than 3 days of work per month" and "would have marked difficulty dealing with work peers, supervisors, and the public." Tr. 354. The ALJ found that Dr. Smith's retrospective opinions were not controlling because they were unsupported by the record, see Fortner v. Astrue, No. 10-2529, 2011 WL 5299429, at *5 (D. Md. Nov. 2, 2011), not simply *because* they were retrospective. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987) (emphasis added) (noting that "medical evaluations made subsequent to the expiration of a claimant's insured status . . . *may* be relevant to prove a previous disability"); see also Cox v. Barnhart, 471 F.3d 902, 907 (4th Cir. 2006) (emphasis added) ("[T]he ALJ was entitled to grant Dr. Hackbarth's opinion less deference because of the inconsistencies the judge identified *and* because the letter had been written three years after Cox's benefits expired.").

The remand order admonished the ALJ for previously disregarding Dr. Smith's opinions because he began treating Hardy after the period at issue: "It appears that the ALJ rejected Dr. Smith's opinion solely because it was retrospective, even though he reviewed the plaintiff's medical records and tests administered prior to the date [Hardy]

13

was last insured." Tr. 506. Here, the ALJ gave further reasons for finding Dr. Smith's opinions to be unpersuasive. He pointed out the "incomplete nature" of the MCMI-III and MMPI-2 tests administered by Dr. Drummond, which apparently formed the primary basis of Dr. Smith's opinions regarding Hardy's psychological impairments during the period at issue. Tr. 354, 463. The ALJ noted that although Dr. Smith began treating Hardy for anxiety in 2003, none of the other treating sources during the period at issue cited any treatment for anxiety. Tr. 453. The ALJ also pointed out that Dr. Smith's consideration of the record omitted Dr. Lovelace's mental health treatment of Hardy prior to her admittance into the pain center. Tr. 463.

The court finds that the ALJ "applied the substance" of the § 404.1527(d) factors and gave specific reasons for the weight given to Dr. Smith's opinions. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

In sum, the ALJ's decision to afford less than controlling weight to the medical opinions of Drs. Lovelace, Drummond, and Smith, despite their status as treating physicians, is supported by substantial evidence. The ALJ is entitled to rely on the opinions of other physicians and state agency psychologists when they more accurately reflect the claimant's condition and are consistent with the record. See Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986); 20 C.F.R. §§ 404.1527(f), 416.927(f).[4]

---

[4] Hardy also argues that the ALJ essentially recited his "same findings" in his decision following the court's remand order. Pl.'s Br. 1; Pl.'s Obj. 2-3. The magistrate judge did not address the ALJ's compliance with the directives of the previous R&R. The court notes that the magistrate judge should have considered whether the ALJ complied with the previously-filed R&R and this court's subsequent order adopting the R&R and remanding to the ALJ. "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." Sullivan v. Hudson, 490 U.S. 877, 886 (1989). Despite this omission, the court finds that the ALJ did not simply recount his earlier findings, but instead provided a more detailed evaluation of Hardy's treating physicians than before.

### B. Subjective Complaints of Pain

Hardy next objects to the R&R on the ground that the ALJ's evaluation of her credibility and subjective complaints of pain is not supported by substantial evidence. Pl.'s Obj. 8. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to cause the claimant's pain or other symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Second, once such an impairment has been established, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine whether they limit the claimant's ability to perform basic work activities. Id. If the claimant's statements regarding intensity, persistence, or limiting effects of pain are not substantiated by objective medical evidence, the ALJ must make a credibility determination based on the entire record. 20 C.F.R. § 404.1529(a).

Hardy testified during the various administrative hearings that she was in "excruciating pain" and "wasn't able to do anything" prior to her treatment at the pain management center. Tr. 396. She stated that she was "mostly bedridden" during that time and "all I could do is lay down." Tr. 742. Hardy asserted that in 1998, her psychological condition was "much better," but that "it's just gotten awful, so awful." Tr. 411.

The ALJ found that Hardy's medically determinable impairments could be expected to produce her alleged symptoms. Tr. 456. However, the ALJ determined that Hardy's statements concerning the intensity, persistence, and limiting effects of her

symptoms were not substantiated by the record and not credible to establish impairment of the severity alleged. Tr. 456, 461.

The ALJ's decision is sufficiently specific to make clear the weight given to Hardy's subjective complaints and the reasons for that weight. See SSR 96-7p, 1996 WL 374186, at *4. In the remand order, the magistrate judge found that the ALJ focused too heavily on the lack of objective findings accounting for Hardy's subjective complaints of pain, failing to consider the link between Hardy's mental impairments and her subjective complaints. Tr. 509. Here, the ALJ again noted a lack of objective evidence supporting Hardy's subjective allegations. See Tr. 455-61 (providing a thorough discussion of Hardy's treatment and concluding that the records show "rather limited objective findings to support the degree of limitations asserted by the claimant for the period at issue"); Craig, 76 F.3d at 591 ("[S]ubjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant."). But the ALJ also looked beyond the objective findings, or lack thereof, and discussed Hardy's failure to see physicians or pursue suggested treatment measures, including psychotherapy, during the period at issue, and her periods of improvement with greater activity. Tr. 461. An ALJ is not required to conduct a formalistic recitation of the evidence, so long as he "sets for the specific evidence he relies on in evaluating the cliamant's credibility." White v. Massanari, 271 F.3d 1256, 1261 (10th Cir. 2001).

The ALJ took Hardy's pain disorder and depression into account, finding them to be "sufficient to interfere with concentration and memory but not to preclude all work." Tr. 463. Finally, the ALJ did not simply dismiss all of Hardy's subjective complaints,

but found the medical opinions and treatment notes to be consistent with her "credible" statements. Id. "Because [the ALJ] had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The ALJ's assessment of Hardy's subjective complaints of pain and credibility is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R and **AFFIRMS** the Commissioner's decision denying benefits.

**AND IT IS SO ORDERED**.

---
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 27, 2012**
**Charleston, South Carolina**